IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| QIANMING FU,<br><br>    *Plaintiff,*<br><br>v.<br><br>ALLRIVER-DIRECT, *et al*,<br><br>    *Defendants.* | Civil Action No. 2:25-cv-615<br><br>Hon. William S. Stickman IV |

**OPINION**

WILLIAM S. STICKMAN IV, United States District Judge

Plaintiff Qianming Fu ("Fu") brought this action seeking a temporary restraining order ("TRO") against the forty-five defendants listed on Schedule A to the Complaint ("Defendants"). (ECF No. 1). At Count I, Fu alleges that Defendants infringed on U.S. Patent No. 12,144,420 B1 ("the '420 Patent")—which describes a hanging storage device for stuffed animals. Fu alleges that Defendants infringed on the '420 Patent by manufacturing and selling indistinguishable products through online storefronts on Amazon.com and other online platforms. Fu further alleges that Defendants violated the Lanham Act. (*Id.* ¶¶ 46-61).

On May 7, 2025, the Court held a video hearing on the *ex parte* request for a TRO. (ECF No. 8). Based on the Court's review of the complaint, which included illustrations of the allegedly infringing products, and the brief in support of the TRO, the Court issued TRO that, in part, barred Defendants from selling infringing products and froze assets held in Defendants' online storefronts. (ECF No. 10).

The Court scheduled a hearing on whether to convert the TRO into a preliminary injunction for May 21, 2025. (ECF No. 12). The hearing was later continued to June 2, 2025.

1

(ECF No. 18). Both scheduling orders stated: "*All parties are required to attend in person.*" (ECF Nos. 12 and 18) (emphasis added).[1] The hearing was held, as scheduled, on June 2, 2025. (ECF No. 38). Fu did not attend. No Defendants were present. The only participant in the hearing was Fu's counsel, who presented argument. No substantive evidence was presented. For the reasons set forth below, the Court will decline to convert the TRO into a preliminary injunction.[2] The TRO will be vacated.

## I.  STANDARD OF REVIEW

Utility patents are issued pursuant to 35 U.S.C. § 101, which provides that a patent may be obtained for "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof . . . ." 35 U.S.C. § 101. The Patent Act enables federal courts to issue injunctive relief "to prevent the violation of any right secured by patent." 35 U.S.C. § 283. For patent infringement claims, the Court must apply the preliminary injunction standards set forth by the United States Supreme Court and the United States Court of Appeals for the Federal Circuit. 28 U.S.C. § 1295(a)(1) ("The [Federal Circuit] shall have exclusive jurisdiction . . . of an appeal from a final decision of a district court of the United States . . . in any civil action arising under . . . any Act of Congress relating to patents.")

---

[1] In recent months, this District has seen a proliferation of patent cases which, as here, assert claims against a schedule comprised of many defendants accused of selling infringing products through online storefronts. As will be described below, the experience of the Court is that these actions frequently feature *pro-forma* papers that recite the requisite elements for injunctive relief but are light on case-specific detail. The Court has found that, especially in patent cases, the parties are not able to efficiently demonstrate infringement or mount their defenses though a video hearing. The Court required the parties in this case to appear in person. Absent compelling cause, it intends on doing so in all similar cases. Parties who file their action in this district expect to come to this District to present their claims.

[2] Fu never presented a motion for preliminary injunction. Rather, he filed a Motion for TRO, which included in its proposed order an order to show cause why the TRO should not be converted into a preliminary injunction. (ECF No. 2-1).

2

"The decision to grant or deny . . . injunctive relief is an act of equitable discretion by the district court." *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006); *see also* 35 U.S.C. § 283 (generally providing that courts "may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable"). Injunctive relief is "an extraordinary remedy never awarded as of right." *Wind Tower Trade Coalition v. United States*, 741 F.3d 89, 95 (Fed. Cir. 2014) (internal citations omitted). A party seeking a preliminary injunction must therefore demonstrate: (1) a reasonable likelihood of success on the merits; (2) the prospect of irreparable harm in the absence of an injunction; (3) that this harm would exceed harm to the opposing party; and (4) that the public interest favors such relief. *See, e.g., Sciele Pharma Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1259 (Fed. Cir. 2012). In determining whether to issue injunctive relief, no one factor, taken individually, proves dispositive. *See Hybritech v. Abbott Labs.*, 849 F.2d 1446, 1451 (Fed. Cir. 1988). Rather, the Court "must weigh and measure each factor against the other factors and against the form and magnitude of the relief requested." *Id.* at 1451. Nevertheless, the Court will not grant an injunction unless the movant "establishes both of the first two factors, likelihood of success on the merits and irreparable harm." *PHG Tech., LLC v. St. John Cos., Inc.*, 469 F.3d 1361, 1365 (Fed. Cir. 2006) (internal citations omitted).

In reaching its decision on a request for injunctive relief, a district court sits as both the trier of fact and the arbiter of legal disputes. A court must, therefore, make "findings of fact and conclusions of law upon the granting or refusing of a preliminary injunction." *Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1178 (3d Cir. 1990) (citing FED. R. CIV. P. 52(a)(2)). At the preliminary injunction stage, "procedures [] are less formal and evidence [] is less complete than in a trial on the merits." *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 718 (3d Cir.

2004); *see also AT&T Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994) ("[T]he grant or denial of a preliminary injunction is almost always based on an abbreviated set of facts, requiring a delicate balancing [that] is the responsibility of the district judge." (internal citations omitted)). Accordingly, a court "may rely on affidavits and hearsay materials which would not be admissible evidence." *Kos Pharms.*, 369 F.3d at 718 (quoting in parenthetical *Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982, 985 (11th Cir. 1995)). But the weight given to such materials will "vary greatly depending on the facts and circumstances of a given case." *Id.* at 719. A court is also tasked with assessing the credibility of witness testimony and may base the decision to grant or deny a preliminary injunction on credibility determinations. *See, e.g.*, *Hudson Glob. Res. Holdings, Inc. v. Hill*, 2007 WL 1545678, at *8 (W.D. Pa. May 25, 2007).

Against this backdrop, a district court maintains the sound discretion to grant or deny a preliminary injunction. *See Reilly v. City of Harrisburg*, 858 F.3d 173, 178–79 (3d Cir. 2017) ("District courts have the freedom to fashion preliminary equitable relief so long as they do so by 'exercising their sound discretion.'" (internal citation omitted)). The primary purpose of preliminary injunctive relief is "maintenance of the status quo until a decision on the merits of a case is rendered." *Acierno v. New Castle Cnty.*, 40 F.3d 645, 647 (3d Cir. 1994). The "status quo" refers to "the last, peaceable, noncontested status of the parties." *Kos Pharms.*, 369 F.3d at 708.

## II. FACTUAL AND PROCEDURAL HISTORY

The only facts for the Court's consideration are those set forth in the complaint (ECF No. 1), a June 2, 2025, supplement (ECF No. 37), and, to the extent unsworn averments can be considered evidence, the representations of counsel at the preliminary injunction hearing. Fu did

not submit a supporting affidavit or declaration. No testimony or evidence was offered at the hearing.

The complaint is troublingly devoid of individualized factual assertions. It appears to be a form document that could be used for essentially any patent infringement/Lanham Act claim brought in a federal district court in the Commonwealth of Pennsylvania. With the exception of paragraphs 1 and 4, identifying Fu, and paragraph 30, the complaint is devoid of any case-specific pleading.

The only case-specific facts in the complaint are that (1) Fu is a resident of the Peoples Republic of China and (2) he owns the '420 Patent. (ECF No. 1, ¶¶1, 4). The complaint also offers a comparison of the operative language of the '420 Patent and three of the Defendants' allegedly infringing products. (*Id.* ¶ 30). It offers the following description of the '420 Patent:

> 1. A storage device, comprising: a mounting component, a storage component, and at least one elastic piece; wherein the mounting component and the storage component are mounted on wall surfaces at intervals in a gravity direction; the at least one elastic piece is connected between the mounting component and the storage component; the at least one elastic piece, the mounting component, and the storage component are enclosed to define a storage space; under driving of an external force, the at least one elastic piece is deformed to define an entrance of the storage space; The product has (1) the mounting component, (2) the storage component, and (3) elastic pieces connecting the components. The mounting component and the storage component are mounted on the wall surfaces. Elastic (sic) pieces connects the mounting component and the storage component. The mounting component and the storage components are symmetrical and foldable. wherein the mounting component and the storage component are foldable structures; the mounting component and the storage component are mounted on the wall surfaces at intervals in the gravity direction when unfolded; wherein the mounting component is symmetrical and is foldable along a perpendicular bisector perpendicular to an outer side edge thereof; the storage component is symmetrical and is foldable along a perpendicular bisector perpendicular to an outer side edge thereof

(*Id.*). It then summarizes the allegations of infringement against Defendants Nos. 1-3. There are no additional case-specific factual allegations in the complaint.[3]

At the *ex parte* hearing on Fu's request for the TRO, the Court reminded his counsel that he has the burden to demonstrate that injunctive relief is warranted and that, at the hearing on the preliminary injunction, the Court expected to be presented with evidence as to each Defendants' alleged infringement. In anticipation of the preliminary injunction hearing, Fu filed a Supplement In Regard to Patent Infringement (ECF No. 37). The supplement consists of screenshots of what Fu's counsel represents to be photographs of the allegedly infringing products from Defendants' respective online storefronts.

In light of the skeletal state of the factual assertions in Fu's papers, his failure to appear, and the lack of any witnesses or documentary evidence, the Court asked his counsel a series of questions about the nature of his claims relevant to his request for preliminary injunctive relief.

First, because the complaint does not assert that Fu actually manufactures and sells the product embodying Patent '420, and does not offer any photographs of Fu's product, the Court enquired as to whether he manufactures and sells the product protected by the patent himself or through licensees:

> THE COURT: What is it – so, Mr. Fu is the – is he the owner of the patent? Or does he own the patent and license it to third parties to manufacture? Or is he manufacturing it himself?
>
> MR. ZHOU: He's not – he's just authorizing some Chinese factories to manufacture the product. And he's also e-commerce operator who sells these kind of products, too.

---

[3] Fu's *Ex Parte* Motion for Temporary Restraining Order (ECF No. 2), and accompanying Memorandum of Law (ECF No. 3), are even more devoid of case-specific facts and argument. Other than a single reference to the '420 Patent in the preliminary statement, (ECF No. 3, p. 3), and four references to storage devices in the statement of facts, (*id.* at 3-4, the remainder of the document appears to be a generic stock brief.

> THE COURT: In what e-commerce platforms?
>
> MR. ZHOU: I think Amazon. But, Your Honor, this is – I need to check on that. It's just my memory.

(6/2/25 Hearing Tr. (rough), p. 9). The Court later asked for the name of Fu's Amazon storefront and the name that Fu uses to market and sell his product:

> THE COURT: What's the name of Mr. Fu's Amazon storefront?
>
> MR. ZHOU: Sorry, Your Honor, I really need to check on that.
>
> THE COURT: Okay. What's the name of Mr. Fu's product? Like what is -- in other words, he's not selling this as the '420 product. What does he call the product on Amazon?
>
> MR. ZHOU: Your Honor, as I said, I just need to check on these submissions.

(*Id.* at 13-14).

With respect to irreparable harm, Fu's complaint and brief offer only stock allegations and generalities. The Court enquired as to whether counsel could articulate any specific facts that would lead to a finding that Fu will suffer irreparable harm absent a preliminary injunction. He could offer only speculation:

> THE COURT: And in your complaint, you've recited different types of harm that courts have held to be irreparable harm. But Mr. Fu has not set forth evidence as to which of those harms would happen to him. Can you articulate at all today what the irreparable harm to Mr. Fu would be if preliminary injunctive relief isn't issued? Specifically, harm that can't be remedied by just a monetary judgment?
>
> MR. ZHOU: Your Honor, this is a patent right. And my client is being infringed. We took – it's hard for us to calculate the exact number, I mean, maybe we're losing sales, maybe we're losing reputation. Because if we – these – all these infringers are not committing their product to acts probably we are like only one who is selling good products for these patents. And if they are selling defective patent – product, if they're selling – I mean, I'm not – I'm not – I can't make a judgment on the quality. But I can't promise they're making good products and to ensure that this product would be continuously popular. These damages they just cannot be evaluated by monetary damage or by money. We would definitely need to stop them from selling.

> THE COURT: Do you know if Mr. Fu has done a market analysis to see if he has been losing sales?
>
> MR. ZHOU: We – I was not aware of that.
>
> THE COURT: Do you know if Mr. Fu has done an analysis of the competing products to see if they do have the low quality?
>
> MR. ZHOU: I think definitely, he's doing some type of analysis.
>
> THE COURT: What type of analysis?
>
> MR. ZHOU: Just by – because they have their own tool like those third-party tool on Amazon for helping them to analysis the sales number and the figures.

(*Id.* at 12-13).[4]

### III.    ANALYSIS

Fu has not met his burden of showing that a preliminary injunction is warranted. In making its determination, the Court focused on two factors of the preliminary injunction analysis — (1) the reasonable likelihood of success on the merits; and (2) a showing of irreparable harm.

#### A.    Reasonable Likelihood of Success on the Merits

Looking at the factual allegations in the complaint, it may appear that Fu was reasonably likely to succeed on the merits of his claims for patent infringement and violations of the Lanham Act. The depictions of the allegedly infringing products set forth in the complaint and supplement seemed to facially embody the elements of the '420 Patent. The issue is that the allegations are conclusory and generic. Fu has not offered anything beyond the allegations of his complaint and the screenshots included in his supplement to meet that burden. He has offered no

---

[4] Counsel repeatedly offered to supplement the record to respond to questions posed by the Court. (6/2/25 Hearing Tr. (rough), pp. 6, 8-11, 13-14). The hearing date was not a surprise. Rather, Fu and his counsel had nearly a month from the entry of the Court's initial scheduling order to prepare for the hearing. A plaintiff in a patent infringement case should be able to articulate basic facts relative to the preliminary injunction analysis by the time of the scheduled hearing.

evidence, testimony, or declarations that would support the Court issuing a preliminary injunction.

"It is well established that 'a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than a trial on the merits." *Trs. of Gen. Assembly of Lord Jesus Christ of Apostolic Faith, Inc. v. Patterson*, 527 F. Supp. 3d 722, 768 (E.D. Pa. 2021) (internal citations omitted). Accordingly, the Court is not strictly bound by the Federal Rules of Evidence and may consider affidavits and other hearsay materials, to the extent appropriate. The relaxation of the Rules of Evidence does not relax the plaintiff's burden of proof. The plaintiff is required to offer sufficient reliable evidence to show that the injunction is warranted. Further, while district courts may rely upon affidavits or declarations in support of a requested preliminary injunction, appellate courts have cautioned over-reliance on self-serving affidavits in lieu of other reliable evidence. For example, in *Atari Games Corp. v. Nintendo of Am., Inc.*, 897 F.2d 1572, 1575–76 (Fed. Cir. 1990), the United States Court of Appeals for the Federal Circuit explained:

> As a general rule, a preliminary injunction should not issue on the basis of affidavits alone. *People ex rel. Hartigan v. Peters,* 871 F.2d 1336 (7th Cir.1989); *Medeco Sec. Locks, Inc. v. Swiderek,* 680 F.2d 37, 216 USPQ 577 (7th Cir.1981); *Carter–Wallace, Inc. v. Davis–Edwards Pharmacal Corp.,* 443 F.2d 867, 169 USPQ 625 (2d Cir.1971). Moreover, a district court should be wary of issuing an injunction based solely upon allegations and conclusory affidavits submitted by plaintiff. *See American Passage Media Corp. v. Cass Communications,* 750 F.2d 1470 (9th Cir.1985) (reversing grant of preliminary injunction of alleged antitrust violations based on conclusory affidavits); *Oakland Tribune, Inc. v. Chronicle Publishing Co.,* 762 F.2d 1374 (9th Cir.1985) (denying preliminary injunction of alleged antitrust violations supported by only two affidavits). When granting an injunction, Rule 52(a) requires that a court set forth the findings of fact and conclusions of law which are the basis of its decision. FED. R. CIV. P. 52(a). The district court need not make binding findings of fact, but at the very least, must find probabilities that the necessary facts can be proved. *Sierra On–Line, Inc. v. Phoenix Software, Inc.,* 739 F.2d 1415, 223 USPQ 227 (9th Cir. 1984).

*Atari Games Corp. v. Nintendo of Am., Inc.*, 897 F.2d 1572, 1575–76 (Fed. Cir. 1990).

Here, Fu has not even offered a declaration or affidavit. He proceeds only on the allegations of his complaint, the images contained in his supplement, and the averments of counsel. The Court holds that this is not enough to satisfy his burden of showing reasonable likelihood of success on the merits. While the photographs contained in the complaint and the supplement seem to bear resemblance to the product described in the '420 Patent, Fu has not offered anything more to establish reasonable likelihood of success on the merits. Other than the unsworn statements of his counsel, he has offered no testimony or other evidence to connect the dots between the photographs of the allegedly infringing products depicted in the supplement and Defendants identified in Schedule A. This is not enough. The Court is "wary of issuing an injunction based solely upon allegations" of counsel and nothing more. *Id.* at 1575–76.

**B.     Irreparable Harm**

To obtain a preliminary injunction, the movant must also show that (1) absent an injunction it will suffer irreparable harm and (2) a sufficiently strong causal nexus relates the alleged harm to the alleged infringement. *Apple Inc. v. Samsung Elecs. Co.*, 695 F.3d 1370, 1377-78 (Fed. Cir. 2012). A likelihood of irreparable harm means "a likelihood of substantial and immediate irreparable injury." *Id.* at 1374. Merely showing some lost market share is insufficient to satisfy this requirement. *Id.* at 1373-74. Likewise, conclusory statements and theoretical arguments by a patentee are insufficient to meet the standard. *Id.* The loss of market share may not be presumed or inferred from an infringement. *Id.* at 1377. Otherwise, "granting preliminary injunctions on the basis of speculative loss of market share would result in granting preliminary injunctions 'in every patent case where the patentee practices the invention.'" *Automated Merch. Sys. v. Crane Co.*, 357 F. App'x. 297, 301 (Fed. Cir. 2009); *Nutrition 21 v. United States*, 930 F.2d 867, 871 (Fed. Cir. 1991). The patentee must support the claims of

irreparable harm with concrete evidence. Moreover, the alleged irreparable injury must be *caused* by the alleged infringement. *Apple Inc.*, 695 F.3d at 1374. Likewise, "there is no presumption of irreparable harm afforded to parties seeking injunctive relief in Lanham Act cases." *Ferring Pharmaceuticals, Inc. v. Watson Pharmaceuticals, Inc.*, 765 F.3d 205, 216 (3d Cir. 2014). Thus, to obtain an injunction in a case under the Lanham Act, as in a patent case, the plaintiff must prove irreparable harm absent the requested relief. *Id.* at 217.

Fu has not demonstrated irreparable harm. The complaint does not plead any specific allegations of irreparable harm as a result of the Defendants' conduct. Fu's brief merely recites generalities about what constitutes irreparable harm. It does not give any case-specific examples of irreparable harm actually suffered by Fu. Despite being ordered to attend, Fu was not present at the hearing and did not testify. There was no other evidence offered with respect to his alleged irreparable harm. To the extent that counsel's answers to the Court's questions can be construed as evidence, they were equivocal and fell short of meeting Fu's burden. When pressed to articulate irreparable harm, counsel could only offer: "it's hard for us to calculate the exact number, I mean, *maybe* we're losing sales, *maybe* we're losing reputation." (6/2/25 Hearing Tr. (rough), p. 12) (emphasis added). Counsel also speculated that the reputation of Fu's product, of an unknown name being sold on an unknown platform, may be injured by the low quality of the Defendants' products. But he acknowledged that this was speculation: "I can't make a judgment on the quality. But I can't promise they're making good products and to ensure that this product would be continuously popular." (*Id.* at 13). Maybe is not enough. Speculation is not enough. Fu had the burden to prove irreparable harm. He relied on his pleadings and the argument of counsel. This was not enough.

## IV. CONCLUSION

Because Fu has not met the burden imposed upon him to obtain a preliminary injunctive relief, he is not entitled to a preliminary injunction. The TRO entered on May 7, 2025, will be vacated.[5]

The Court notes that this case exemplifies a troubling recent trend in which plaintiffs file patent infringement and similar cases against a myriad of "schedule A" defendants in this District which have little connection—either through the parties, counsel, or the subject matter, to this District. Those cases, as here, frequently feature form-like pleadings with little specific factual detail, a dearth of supporting evidence, and no witnesses. In most cases, few defendants appear and most ultimately default. Equitable remedies are by their nature extraordinary remedies. Even where, as here, no defendant appears to contest the entry of a preliminary injunction, preliminary injunctions are not granted by default. Rather, plaintiffs must meet their burden. The Court is not a rubber stamp. Parties appearing before it and seeking relief need to come prepared to meet their burden. If parties are unwilling, or unable, to do so, their action should not be filed.[6]

---

[5] Defendant Woodure filed what it incorrectly described as "Plaintiff's Ex Parte Application for Continuance of Hearing." (ECF No. 22). This application (which was neither ex parte nor filed by a plaintiff) sought to continue the June 2, 2025, hearing due to a conflict with counsel's court schedule. The Court denied the application and declined to continue the hearing as a whole. (ECF No. 35). However, the Court held that it would defer its determination as to whether a preliminary injunction was warranted as to Defendant Woodure until it had an opportunity to present its defenses. Because the Court holds that Fu has failed to meet his burden as to entry of preliminary injunctive relief as to *any* defendant, the Court holds that it need not afford Defendant Woodure an opportunity to be heard.

[6] As the Court indicated to Fu's counsel on the record, it was Fu who failed to appear and to furnish counsel with the necessary evidence to meet his burden. The Court notes that, in the future, attorneys presenting patent infringement and similar claims against "schedule A" defendants will be expected to have a good faith factual basis for every element of their claims in accordance with Federal Rule of Civil Procedure 11. They will not be permitted to hide behind

recitations of the elements of injunctive relief and stock briefing. Failure to appear prepared to make the requisite evidentiary showing may be grounds for sanctions.

BY THE COURT:

/s/ William S. Stickman IV

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

6/2/2025
Dated